### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS BRAIS, | ) | |
| | ) | |
| PLAINTIFF, | ) | No. 1:20-cv-6697 |
| | ) | **JURY DEMANDED** |
| v. | ) | |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

## COMPLAINT

NOW COMES, Plaintiff NICHOLAS BRAIS ("Plaintiff Brais"), by and through his attorneys, Gainsberg Law, P.C., complaining of Defendant, UNITED PARCEL SERVICE, INC. ("Defendant UPS") and states as follows:

### PARTIES

1.      Plaintiff Brais is a resident of the City of Kankakee, Illinois.

2.      Defendant UPS is an Ohio corporation, with a corporate headquarters located in Georgia, and conducted substantial freight shipping business within this judicial district.

### JURISDICTION, VENUE, EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.      This Court has original jurisdiction pursuant to 28 U.S.C. §1331 over the retaliation claims arising under Count I-IV of this Complaint.  This Court has supplemental jurisdiction over Plaintiff Brais's state law claim pursuant to 28 U.S.C. §1367. Venue is proper in this judicial district as the facts and events giving rise to Plaintiff Brais's claims occurred in this judicial district.

4.      Plaintiff Brais has exhausted his administrative remedies as to Counts III and IV and these claims are properly before this Court.  Plaintiff Brais timely filed charges of retaliatory

hostile work environment and disparate treatment - retaliatory discharge with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant UPS, Charge number 21B-2019-01573.

5.        Plaintiff Brais received the Notice of Right to Sue from the EEOC regarding these charges on August 18, 2020, attached as Exhibit A.

6.        Venue is properly placed in this District because the Defendant is transacting business in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District pursuant to 28 U.S.C. §1391(b)(2) and (3).

**FACTS**

7.        On or about June 30, 2014, Plaintiff Brais was hired by Defendant UPS as a Utility person and became a member of the collective bargaining representative Local 701.

8.        On or about December 2014, Plaintiff Brais was permitted leave under the then effective collective bargaining agreement between Defendant UPS and Local 701 and worked for the International Association of Machinists ("IAM"), the International affiliate of the predecessor union to Defendant Local 701, as a business representative in the Automotive Department out of the IAM Headquarters located in the State of Maryland.

9.        On or about January 2017, Plaintiff Brais returned to employment with Defendant UPS as a Utility man assigned to the Santa Fe Regional Shop Facility then located at 7545 Santa Fe Drive, Hodgkins, Illinois.

10.       On or about April 2018, Plaintiff Brais became an Apprentice Mechanic for Defendant UPS and was moved from the day shift to the afternoon shift.

11.     Plaintiff Brais's afternoon shift did not have an assigned union steward.  Plaintiff Brais would consult with and answer questions of his coworkers on his shift with regard to the collective bargaining unit due to his prior experience as a business representative with IAM.

12.     On or about September 2018, Defendant UPS assigned a white male named Mike Leyesa ("Supervisor Leyesa") as the supervisor for Plaintiff Brais's shift.

13.     In September 2018, Supervisor Leyesa began speaking to Plaintiff Brais's coworkers in an intimidating manner and pressuring them to work at unsafe speeds, including at a meeting at which Plaintiff Brais was present.

14.     In September 2018, multiple union members on Plaintiff Brais's shift approached Plaintiff Brais to discuss the pressure to work at unsafe speeds from Supervisor Leyesa.

15.     Shortly after, Plaintiff Brais and a coworker approached Supervisor Leyesa and asked him to respect the workers on the shift and to stop pressuring workers to work at unsafe speeds.  Following this meeting, Supervisor Leyesa apologized the workers for his behavior.

16.     On or about October 2018, Plaintiff Brais's coworker James Crowder, who is Black, reported to Plaintiff Brais that Supervisor Leyesa had been making racially hostile environment when he told another Black employee that the Black employee was "really putting that white boy to work", increasing tension between the Black employee and a Polish employee.

17.     Shortly thereafter, Plaintiff Brais brought these concerns to the attention of Supervisor Leyesa.  Supervisor Leyesa asked Plaintiff Brais for the name of employee who had complained about him, and Plaintiff Brais said he could not divulge the names.

18.     Plaintiff Brais made this complaint to Supervisor Leyesa in good-faith to reduce the racial tensions in the shop and in opposition to a racially hostile work environment.

19.     On or about October 2018, Plaintiff Brais was approached by Supervisor Leyesa, and told to turn down his music because the "VIP" group complained. Plaintiff Brais asked Supervisor Leyesa what he meant by "VIP" group, and Supervisor Leyesa said "Very Important Polish" referring to Plaintiff Brais's Polish coworkers, Foreman Ziggy Rafacz ("Foreman Rafacz"), and Jan Karwacska. Plaintiff Brais then told Supervisor Leyesa that such comments could be considered racist and Supervisor Leyesa did not respond and walked away. Plaintiff Brais was informed by another coworker that Supervisor Leyesa had used the "VIP" term to refer to Polish coworkers as well.

20.     Plaintiff Brais made this complaint to Supervisor Leyesa in good-faith to reduce the racial tensions in the shop and in opposition to a racially hostile work environment.

21.     In early November 2018, Plaintiff Brais approached Supervisor Leyesa to work the day shift instead of the afternoon shift on Wednesday November 16, 2018 and Thursday November 17, 2018 and take a personal day on Friday November 18, 2018 and Supervisor Leyesa agreed to make the change.

22.     Shortly after, on or about November 12, 2018, Foreman Rafacz, came to Plaintiff Brais's work area and told Plaintiff Brais that Supervisor Leyesa told him about the complaints he had made to Supervisor Leyesa about using racially hostile comments. Plaintiff Brais was surprised why Supervisor Leyesa would discuss that matter with Foreman Rafacz. Foreman Rafacz then told Plaintiff Brais that Supervisor Leyesa had told him that he was only receiving the personal day and implied that Supervisor Leyesa would not make the schedule change as well.

23.     Plaintiff Brais then approached Supervisor Leyesa who confirmed that despite their previous agreement, Plaintiff Brais would not be receiving his requested shift change for two days.

24.     On or about November 14, 2020, Plaintiff Brais filed a grievance alleging the denial of the previously agreed schedule change in retaliation for raising complaints about Supervisor Leyesa's racial comments.  To Plaintiff Brais's knowledge, Defendant UPS and Local 701 never addressed this grievance.

25.     On or about November 27, 2018, Supervisor Leyesa told Plaintiff Brais that he needed to inform him anytime a Local 701 member came to the shop for union business.  Plaintiff Brais asked Supervisor Leyesa what he meant, and Supervisor Leyesa said he was referring to Plaintiff Brais's running mate, George Majia, the recording secretary of Local 701, and running mate of Plaintiff Brais on the slate in opposition to the incumbent leadership during the on-going Local 701 union leadership election.  Plaintiff Brais responded to Supervisor Leyesa that Terry Kimmel, a Local 701 business representative had been to the shop multiple times to campaign for the incumbent slate.  Supervisor Leyesa told Plaintiff Brais that he was friends with Terry Kimmel and walked away.

26.     Later that day, Supervisor Leyesa approached Plaintiff Brais and told him he would conduct an hour-long safety evaluation of Plaintiff Brais without any apparent basis.  Additionally, Supervisor Leyesa asked Plaintiff Brais to finish his timecard.  Plaintiff Brais responded that he would turn in his timecard at the regular time at the end of his shift.

27.     The following day, on or about November 28, 2020, Plaintiff Brais discovered he was unable to clock-in for work because his previous timecard was not approved by Supervisor Leyesa.  Supervisor Leyesa falsely claimed the previous timecard listed an incorrect lunchtime and said he would not approve it until it was changed.  Plaintiff Brais insisted the timecard was correct.  Supervisor Leyesa said there would be a meeting regarding the issue.

28.     That evening, a meeting was held with a UPS Manager, Supervisor Leyesa, Plaintiff Brais, and Plaintiff Brais's chosen *Weingarten* observer, Gregory Huggins.  Plaintiff Brais insisted the timecard was corrected and stated he felt retaliated against by Supervisor Leyesa for filing a previous grievance regarding Supervisor Leyesa's retaliation for his complaints regarding Supervisor Leyesa's racial comments.

29.     Following the meeting, Mr. Huggins informed Plaintiff Brais that his timecard was accepted as correct.  Plaintiff Brais filed a grievance regarding this issue as retaliation for his previous grievance against Supervisor Leyesa for his racial comments.  To Plaintiff Brais's knowledge, Defendant UPS and Local 701 never addressed this grievance.

30.     On or about November 29, 2018, Mr. Crowder, approached Plaintiff Brais and told him Supervisor Leyesa continued using hostile language towards him and other black people.

31.     Following this, Plaintiff Brais approached Local 701 union steward Marvin Belin to accompany him to discuss the racial comments and retaliation by Supervisor Leyesa with UPS District Manager Ron Hazel.  Union Steward Belin agreed accompanied Plaintiff Brais to meet with District Manager Hazel.  Plaintiff Brais described the racial comments and harassment by Supervisor Leyesa with District Manager Hazel and stated he had witnesses.  District Manager Hazel responded that the harassment was only Supervisor Leyesa doing his job to supervise the union members.

32.     Plaintiff Brais made this complaint to Supervisor Leyesa in good-faith to reduce the racial tensions in the shop and in opposition to a racially hostile work environment and to deter retaliation for said opposition.

33.     After that meeting, Plaintiff Brais reported the response of District Manager Hazel to Mr. Crowder.  Mr. Crowder then told Plaintiff Brais to speak to another black union member,

Darrel Holder. Darrel Holder confirmed to Plaintiff Brais that Supervisor Leyesa remarked to him in front of a white Polish co-worker that he was "really putting that white boy to work" and that the comment increased racial tension between him and the white Polish co-worker. Plaintiff Brais, Mr. Crowder and Mr. Holder agreed the comment contributed to a hostile work environment for black employees, and Plaintiff Brais agreed to file a Human Resources complaint when he returned from vacation on December 10, 2018.

34. On December 10, 2018, Plaintiff Brais filed a Complaint with the UPS Anti-Harassment Line, Case Report #1812-UPS-10426, regarding the continued racial comments of Supervisor Leyesa, intimidation and retaliation for his previous reports against Supervisor Leyesa for racially hostile comments.

35. Plaintiff Brais made this complaint to Supervisor Leyesa in good-faith to reduce the racial tensions in the shop and in opposition to a racially hostile work environment and to deter retaliation for said opposition.

36. On or about December 19, 2018, two representatives believed to be from Defendant UPS's Human Resources department met with Plaintiff Brais, Mr. Holder and Mr. Crowder regarding the December 10, 2018 Human Resources complaint. Plaintiff Brais complained that the comments created a racially hostile work environment and the retaliatory harassment Plaintiff Brais experienced from Supervisor Leyesa, including the actions subject to filed grievances, also created a hostile environment.

37. On January 8, 2019, three personnel from the Defendant UPS's Human Resources department met with Plaintiff Brais and Mr. Huggins. Plaintiff Brais was informed that Defendant UPS was closing its investigation because no employees felt in fear for their jobs, harassed or intimidated by Supervisor Leyesa and that Supervisor Leyesa would not be transferred. Plaintiff

Brais stated that he and Mr. Crowder felt in fear for their jobs, harassed and intimidated by Supervisor Leyesa. Plaintiff Brais was informed that management was informed of the situation and that they should see changes in management actions. Plaintiff Brais was asked if he agreed with this resolution and he said he was not as he felt there were no changes were actually discussed and stated he would continue to pursue the filed grievances. That day, Plaintiff Brais filed another grievance about Supervisor Leyesa's comments at issue in the December 10, 2018 Human Resources complaint. To Plaintiff Brais's knowledge, Defendant UPS and Local 701 never addressed this grievance.

38.    On or about January 14, 2019, Defendant UPS relocated the Santa Fe Regional Repair shop, to 6301 Santa Fe Driver, Hodgkins, Illinois, a facility much larger than the old facility. The new facility confused employees who were not familiar with the layout of the facility and the set up of the parts room necessary for the work was not complete.

39.    During a shift meeting at the new facility, other changes were announced by Supervisor Leyesa, including video surveillance at the new facility and designated smoking areas. At this meeting, Plaintiff Brais raised the issue of impact gloves to protect the hands of the workers, which were requested a number of months before the facility changes. Supervisor Leyesa stated that there were no gloves on order.

40.    Following the meeting, several members complained to Plaintiff Brais about the size and disorganization of the new facility, the change in video surveillance and designated smoking areas. When Supervisor Leyesa came to Plaintiff Brais's area after the meeting, Plaintiff Brais raised these concerns, especially the fact the larger facility would require more time for employees to perform their work. Supervisor Leyesa refused to address any of these concerns and left.

41.     After this interaction, Plaintiff Brais observed another apprentice mechanic, Kris Cikowski struggling to roll two trailer tires across the new shop floor the additional distance to the work station.  Mr. Cikowski was a relatively new employee, weighing only about 155 pounds. Each tire he was rolling was approximately 300 pounds.

42.     Out of concern for Mr. Cikowski's safety, Plaintiff Brais approached Mr. Cikowski on his way to the parts area after Mr. Cikowski retuned to his work station and Plaintiff Brais told him that is was safer to roll one 300 pounds tire at a time instead of two 300 pound tires at a time, and that to Plaintiff Brais's understanding from a prior discussion with CHSP safety team member Mr. Huggins on the issue, it was Defendant UPS's policy to only have one tire rolled at a time.

43.     Plaintiff Brais also told Mr. Huggins he observed Mr. Cikowski rolling two 300 pound tires at the same time and informed him of his understanding that the policy to only roll one 300 pound tire at a time.  Mr. Huggins confirmed he has also told Mr. Cikowski the same.

44.     On or about January 15, 2019, Plaintiff Brais addressed his co-workers before a shift safety meeting, stating that the new shop was very large and that work may take longer to perform safely.  Plaintiff Brais raised the example of rolling one tire at a time instead of two and emphasized that the most important goal was to work safe to return home to their families.  Plaintiff Brais said he has no problem filing a grievance if anyone felt harassed by management to work in an unsafe manner.

45.     On or about January 28, 2019, Plaintiff Brais returned from a sick day and was brought to a meeting with Defendant UPS management by UPS CACH Automotive Fleet Manager Will Altman.  Manager Altman, Defendant UPS District Labor Manager Matthew Mueller, Defendant UPS Manager Jim Bloede and Union Steward Belin attended the meeting with Plaintiff Brais.

46.     Manager Muller stated that Plaintiff Brais was accused of attempting to initiate a work slowdown.  Plaintiff Brais stated he only told his co-workers to take the time to work safely due to the size of the new shop.   Manager Mueller then falsely accused Plaintiff Brais of approaching each worker individually to tell them to slow down and to roll one tire instead of two to cost the company money.  Plaintiff Brais disputed this and again restated that he did raise the issue of rolling one tire instead of two because he saw the 155 pound Mr. Cikowski struggling to roll two 300 pounds tires to save time due to the new size of the facility and that this was unsafe. Plaintiff Brais said he believed it was UPS policy to only have one tire rolled at a time from Mr. Huggins.  Plaintiff Brais then raised a serious injury that had occurred at the old shop shortly before the relocation.  Plaintiff Brais stated he felt that this meeting was in retaliation and harassment for the previous grievances he filed against the racial comments and retaliation by Supervisor Leyesa. Manager Bloede responded that the matter was investigated and no one felt harassed.  Plaintiff Brais said that was wrong as both he and Mr. Crowder felt in fear for their jobs.  Manager Bloede said he would not address the issue further, and that he did not "buy" Plaintiff Brais's account of what he told his coworkers.

47.     The managers left the room for approximately 40 minutes and returned and informed Plaintiff Brais he was discharged and provided him with a letter inaccurately stating his date of discharge was January 29, 2019.

48.     On January 28, 2019, Plaintiff Brais was terminated in retaliation for his complaints regarding the racial comments and complaints of retaliation motivated by his complaints of racial comments by Supervisor Leyesa, and for his statements regarding working safely, including the safe rolling of 300 pound tires which posed a significant risk of serious harm and injury to

coworkers if done too fast and two at a time and requesting impact gloves to protect the hands of his coworkers.

49.     Mr. Huggins who did not make complaints regarding the racial comments or retaliation by Supervisor Leyesa was not harassed, discharged or disciplined.

50.     Other employees comparable to Plaintiff Brais who did not make complaints who did not make complaints regarding the racial comments or retaliation by Supervisor Leyesa were not harassed, discharged or disciplined.

51.     At all times material to this Complaint, Plaintiff Brais met or exceeded the legitimate employment expectations of Defendant UPS.

52.     The retaliatory harassment endured by Plaintiff Brais for his opposition to racially hostile comments by Supervisor Leyesa was severe and pervasive, and altered the terms and conditions of his employment.

53.     The retaliatory harassment endured by Plaintiff Brais for his opposition to racially hostile comments by Supervisor Leyesa was perceived by Plaintiff Brais for his opposition to racially hostile comments by Supervisor Leyesa was perceived as offensive by Plaintiff Brais.

54.     As a direct and proximate result of the harassment endured by Plaintiff Brais for his for his opposition to racially hostile comments by Supervisor Leyesa he endured loss of reputation and emotional distress.

55.     As a direct and proximate result of his wrongful termination, Plaintiff Brais suffered loss of employment and income, loss of reputation, emotional distress, loss of future earning capacity, and has incurred attorney's fees and costs in this matter.

<u>COUNT I</u>
**Hostile Work Environment Claim Based On Retaliation in Violation of the Civil Rights Act**
**of 1866, 42 U.S.C. § 1981**
**Plaintiff Brais v. Defendant UPS**

1-55.    Plaintiff Brais re-alleges and restates Paragraphs 1-55 of this Complaint as if set forth fully herein this Paragraph of Count I of this Complaint.

56.    Defendant UPS has discriminated against Plaintiff Brais with regard to a hostile work environment, discrimination, harassment, retaliation, discharge and other adverse, unequal and unfavorable terms and conditions of employment because of his good-faith opposition to race and color discrimination as set forth herein this Complaint in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and 1981(a).

57.    Defendant UPS discriminated on the basis of Plaintiff Brais's opposition to race and color discrimination at Defendant UPS by perpetuating a hostile work environment that negatively altered the terms and conditions of his employment and resulted in his termination.

58.    By the above actions, but not limited to the same, Plaintiff Brais was subject to pervasive and continuous unwelcome hostility by management of Defendant UPS, which altered the terms conditions and privileges of employment because of his opposition to racial discrimination.

59.    This harassment was intolerable and offensive to a reasonable employee and Plaintiff Brais was offended.

60.    Defendant UPS knew of the harassment and failed to take prompt remedial action to stop and correct the same.

61.    By the above actions but not limited to the same, Defendant UPS created an intimidating, hostile and objectively offensive work environment, which unreasonably interfered with Plaintiff's work performance, and seriously affected his psychological well-being.

62. Defendant UPS employees who did not oppose race discrimination at Defendant UPS were not subject to the same or similar treatment.

63. Due to its inaction, as well as the direct actions of its management, Defendant UPS condoned and ratified the aforementioned unlawful acts.

64. Defendant UPS's actions reflect a policy, custom, or pattern of official conduct of engaging in and condoning harassment and discrimination of employees opposing race discrimination.

65. Defendant UPS's conduct has been intentional, deliberate, willful and conducted with disregard of the rights of the Plaintiff Brais.

66. By reason of Defendant UPS's discriminating, harassing and retaliatory employment practices based upon his opposition to Defendant IDP's discrimination based on race and color, Plaintiff Brais has experienced extreme harm, including emotional distress, loss of compensation, wages, back and front pay, loss of reputation and loss other employment benefits, and as such, Plaintiff Brais entitled to all legal and equitable remedies available under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

WHEREFORE, Plaintiff Brais demands judgment against Defendant UPS as follows:

a. A declaratory judgment that the employment practices challenged herein are illegal and violative of the rights secured to Plaintiff Brais;
b. Judgement against Defendant UPS for Plaintiff Brais in an amount sufficient to fully compensate Plaintiff for all personal damages sustained, including but not limited to full compensation for emotional distress, mental anguish, humiliation and loss of reputation;
c. Judgement against Defendant UPS for Plaintiff Brais in an amount sufficient to fully compensate Plaintiff Brais for all pecuniary damages sustained, including but not limited to front pay, back pay, lost income and benefits;
d. Judgement against Defendant UPS for Plaintiff Brais for punitive damages;
e. Judgement against Defendant UPS for Plaintiff Brais for the reasonable attorney's fees and costs incurred by Plaintiff Brais prosecuting this action;

    f.   Judgement against Defendant UPS for Plaintiff Brais for pre-judgment and post-judgment interest at the highest rate permitted by law; and

    g.   Any and all other relief that this Honorable Court may deem just and equitable.

**COUNT II**

**Disparate Treatment (Retaliation) Wrongful Discharge in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981**
**Plaintiff Brais v. Defendant UPS**

1-67.   Plaintiff Brais realleges and incorporates by reference all preceding Paragraphs of Count I of this Complaint, as if fully set forth herein this Paragraph of Count II of this Complaint.

68.   Defendant UPS's termination of Plaintiff Brais because of his good-faith opposition to Defendant's discrimination based on race and color, as set forth herein this Complaint constitutes a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and 1981(a).

69.   Defendant UPS's conduct has been intentional, deliberate, willful and conducted with disregard of the rights of the Plaintiff Brais.

70.   By reason of Defendant UPS's discriminatory employment practices based upon race and color, Plaintiff Brais has experienced extreme harm, including loss of compensation, wages, back and front pay, damages and other employment benefits, emotional distress, loss of reputation, and as such, Plaintiff Brais is entitled to all legal and equitable remedies available under the Civil Rights Act of 1866.

WHEREFORE, Plaintiff Brais demands judgment against Defendant UPS as follows:

    a.   A declaratory judgment that the employment practices challenged herein are illegal and violative of the rights secured to Plaintiff Brais;

    b.   Judgement against Defendant UPS for Plaintiff Brais in an amount sufficient to fully compensate Plaintiff Brais for all personal damages sustained, including but not limited to full compensation for his emotional distress, mental anguish, humiliation and loss of reputation;

14

c. Judgement against Defendant UPS for Plaintiff Brais in an amount sufficient to fully compensate Plaintiff for all pecuniary damages sustained, including but not limited to front pay, back pay, lost income and benefits

d. Judgement against Defendant UPS for Plaintiff Brais for punitive damages;

e. Judgement against Defendant UPS for Plaintiff Brais for the reasonable attorney's fees and costs incurred by Plaintiff Brais prosecuting this action;

f. Judgement against Defendant UPS for Plaintiff Brais for pre-judgment and post-judgment interest at the highest rate permitted by law; and

g. Any and all other relief that this Honorable Court may deem just and equitable.

### COUNT III
**Hostile Work Environment (Retaliation) in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*
Plaintiff Brais v. Defendant UPS**

1-67. Plaintiff Brais reincorporates and realleges all preceding Paragraphs of Count I of this Complaint as though fully set forth herein this Paragraph of Count III of this Complaint.

68. At all times material to this Complaint, Defendant UPS employed 15 or more employees in Illinois.

69. At all times material to this Complaint, Plaintiff Brais was an "employee" of Defendant UPS within the meaning and protection of 42 U.S.C. § 2000e, *et seq*.

70. At all times material to this Complaint, Defendant UPS was an "employer" of Plaintiff Brais within the meaning and protection of 42 U.S.C. § 2000e, *et seq*.

71. Plaintiff Brais is a member of a protected class. He engaged in activity protected under Title VII when he complained about hostile racial and ethnic based comments by Supervisor Leyesa and subsequent harassment and retaliation for said complaints as described herein to the management of Defendant UPS.

72. During the course of Plaintiff Brais's employment with Defendant UPS, he was subjected to a severe and pervasive hostile work environment because of his Title VII protected activity, as set forth herein this Complaint.

73. Defendant UPS treated similarly situated employees who did not engaged in Title VII protected activity more favorably than the Plaintiff Brais was treated, as alleged herein. Defendant UPS intended to and/or knowingly engaged in and/or condoned and/or ratified the severe and pervasive retaliatory discrimination, harassment and hostile work environment, as alleged herein.

74. The actions of Defendant UPS as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff Brais because of his protected activity, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq.*

75. At all times relevant to this action, Defendant UPS had a duty under Title VII to refrain from discriminating against, harassing, retaliating against and permitting a hostile work environment for Plaintiff Brais based on his Title VII protected activity. Defendant UPS had a duty under Title VII to prevent the hostile work environment because Plaintiff Brais engaged in Title VII protected activity.

76. Despite actual and/or constructive knowledge of the severe and pervasive hostile work environment, discrimination and harassment based on Plaintiff Brais's Title VII protected activity, Defendant UPS refused to take proper action to investigate, remediate, stop, prevent, or otherwise address the ongoing discrimination, harassment, hostile work environment, or retaliation.

77. Defendant UPS intentionally subjected Plaintiff Brais to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the

conditions of Plaintiff Brais's employment and by knowingly failing and refusing to protect Plaintiff Brais from those hostile and abusive conditions.

78.     The discriminatory actions by Defendant UPS, through its management, agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff Brais.

79.     Defendant UPS, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

80.     The actions of Defendant UPS in intentionally engaging in and condoning discrimination, harassment, hostile work environment and retaliation against Plaintiff Brais because he engaged in Title VII protected activity have caused Plaintiff Brais mental anguish, humiliation, loss of reputation, emotional distress, lost wages and benefits, future pecuniary losses, and other consequential damage.

81.     There is a causal connection between the Plaintiff Brais's Title VII protected activity and the dissimilar treatment suffered by Plaintiff Brais at the hands of the Defendant UPS.

WHEREFORE, Plaintiff Brais demands judgment against Defendant UPS as follows:

a.   A declaratory judgment that the employment practices challenged herein are illegal and violative of the rights secured to Plaintiff Brais;
b.   Judgement against Defendant UPS for Plaintiff Brais in an amount sufficient to fully compensate Plaintiff for all personal damages sustained, including but not limited to full compensation for his emotional distress, mental anguish, humiliation and loss of reputation;
c.   Judgement against Defendant UPS for Plaintiff Brais in an amount sufficient to fully compensate Plaintiff for all pecuniary damages sustained, including but not limited to front pay, back pay, lost income and benefits;
d.   Judgement against Defendant UPS for Plaintiff Brais for punitive damages;
e.   Judgement against Defendant UPS for Plaintiff Brais for the reasonable attorney's fees and costs incurred by Plaintiff Brais prosecuting this action;
f.   Judgement against Defendant UPS for Plaintiff Brais for pre-judgment and post-judgment interest at the highest rate permitted by law; and

g.   Any and all other relief that this Honorable Court may deem just and equitable.

**COUNT IV**
**Disparate Treatment (Retaliation) Retaliatory Discharge in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.***
**Plaintiff Brais v. Defendant UPS**

1-81.   Plaintiff Brais reincorporates and realleges all preceding Paragraphs of Count III of this Complaint as though fully set forth herein this Paragraph of Count IV of this Complaint.

82.   Defendant UPS terminated Plaintiff Brais because of his Title VII protected activity, as set forth herein this Complaint.

83.   In the alternative, Plaintiff Brais's Title VII protected activity was a motivating factor of his termination by Defendant UPS, as set forth herein this Complaint.

84.   Defendant UPS did not terminate similarly situated employees who did not engage in Title VII protected activity, as alleged herein.

85.   The actions of Defendant UPS as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff Brais because of his Title VII protected activity, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq.*

86.   At all times relevant to this action, Defendant UPS had a duty under Title VII to refrain from discriminating against Plaintiff Brais because of his Title VII protected activity.

87.   The discriminatory actions by Defendant UPS, through its management, agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff Brais.

88.     Defendant UPS, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

89.     The actions of Defendant UPS in intentionally engaging in and condoning discrimination because Plaintiff Brais engaged in Title VII protected activity, have caused Plaintiff Brais mental anguish, humiliation, loss of reputation, emotional distress, inconvenience, lost compensation and benefits, future pecuniary losses, and other consequential damage.

90.     There is a causal connection between the Plaintiff Brais's participation in Title VII protected activity and the dissimilar treatment suffered by Plaintiff Brais at the hands of the Defendant UPS.

WHEREFORE, Plaintiff Brais demands judgment against Defendant UPS as follows:

a.   A declaratory judgment that the employment practices challenged herein are illegal and violative of the rights secured to Plaintiff Brais;
b.   Judgement against Defendant UPS for Plaintiff Brais in an amount sufficient to fully compensate Plaintiff for all personal damages sustained, including but not limited to full compensation for his emotional distress, mental anguish, humiliation and loss of reputation;
c.   Judgement against Defendant UPS for Plaintiff Brais in an amount sufficient to fully compensate Plaintiff for all pecuniary damages sustained, including but not limited to front pay, back pay, lost income and benefits;
d.   Judgement against Defendant UPS for Plaintiff Brais for punitive damages;
e.   Judgement against Defendant UPS for Plaintiff Brais for the reasonable attorney's fees and costs incurred by Plaintiff Brais prosecuting this action;
f.   Judgement against Defendant UPS for Plaintiff Brais for pre-judgment and post-judgment interest at the highest rate permitted by law; and
g.   Any and all other relief that this Honorable Court may deem just and equitable.

## COUNT V
### Retaliatory Discharge Under Illinois Common Law
### Plaintiff Brais v. Defendant UPS

1-55.   Plaintiff Brais re-alleges and restates Paragraphs 1-55 of this Complaint as if set forth fully herein this Paragraph of Count V of this Complaint.

56.     Plaintiff Brais was an "employee" within the meaning of Illinois common law.

57.     Defendant UPS was an "employee within the meaning of Illinois common law.

58.     Plaintiff Brais's protected activities as set forth herein were an attempt to stop unsafe work practices, including working at safe speeds, advocacy for impact gloves and the rolling of two 300 pound tires, which posed a significant risk or serious harm or injury to employees at his workplace.

59.     Defendant UPS's discharge of Plaintiff Brais in retaliation for his aforementioned protected activity was in violation of Illinois public policy to protect workers attempting to stop unsafe work practices that pose a significant risk of serious harm or injury.

60.     As a direct and proximate result of the retaliatory discharge of Plaintiff Brais by Defendant UPS, Plaintiff Brais has loss of past and future income, loss of future income earning potential, loss of reputation, sustained emotional distress.

61.     Defendant UPS's conduct was willful, wanton, reckless and/or deliberate which justifies imposition of punitive damages.

WHEREFORE, Plaintiff Brais, respectfully requests this Court enter judgment against Defendant UPS as follows:

a.  Judgment against Defendant UPS in the amount of back pay to be determined at time of trial;
b.  Judgment against Defendant UPS for the amount of prejudgment interest on his back pay at the highest rate allowable under law to be determined at time of trial;
c.  Judgment against Defendant UPS in the amount of compensatory damages to be determined at time of trial;
d.  Judgment against Defendant UPS and imposition of punitive damages in an amount to be determined at trial;
e.  An award of reasonable costs incurred in prosecuting this action against Defendant UPS; and
f.  Such other and further relief as this Court deems just and proper.

TRIAL BY JURY DEMANDED.

Respectfully submitted,

By: ___/s/ Nicholas Kreitman, Esq.
        Nicholas Kreitman, Esq.
        Plaintiff's Attorney

Nicholas Kreitman, Esq.
#6313283
Gainsberg Law, P.C.
22 West Washington Street, 15th Floor
Chicago, IL 60602
(847) 970-0575
nick@gainsberglaw.com